**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Terri Hooks-Rivera, | Civil Action No.: 3:23-cv-02092-SAL |
| Plaintiff(s), | |
| vs. | **COMPLAINT**<br>**(JURY TRIAL DEMANDED)** |
| Bulow Biotech Prosthetics, LLC d/b/a Bulow Orthotic and Prosthetic Solutions, | |
| Defendant. | |

The Plaintiff, complaining of the Defendant above-named, hereby alleges and pleads as follows:

**JURISDICTION AND VENUE**

1. Plaintiff Terri Hooks-Rivera is a citizen and resident of Richland County, South Carolina.

2. Upon information and belief, Defendant Bulow Biotech Prosthetics, LLC d/b/a Bulow Orthotic and Prosthetic Solutions (hereinafter "Bulow") is a foreign Limited Liability Corporation incorporated in the State of Tennessee, and that maintains an office and agent for transacting business in Lexington County, South Carolina. At all times relevant, Bulow operated Bulow Orthotic and Prosthetic Solutions, which provides orthotic and prosthetic products and services to the public.

3. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction based on complete diversity of citizenship of the parties and because the amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars exclusive of interest and costs.

1

4. That in accordance with 28 U.S.C. § 1391 and Local Civil Rule 3.01(A)(1), venue is proper in the Columbia Division of the District of South Carolina as the alleged acts or omissions occurred in the Columbia Division of South Carolina.

## FACTUAL ALLEGATIONS

5. Plaintiff realleges and reincorporates the paragraphs above as if fully set forth verbatim herein.

6. Plaintiff brings this case for serious personal injuries Plaintiff suffered as a result of a defective prosthetic leg device failing, causing Plaintiff to fall causing serious injury, physical, emotional, and economic damages.

7. At all times relevant Defendant, by and through Defendants' agents manufactured, designed, assembled, tested, fitted, adjusted, fabricated, repaired, marketed, distributed, advertised, and sold prosthetic devices, including the subject prosthetic device at issue in this matter.

8. At all relevant times, Defendant Bulow employed prosthetist Robert C. Latham, and Mr. Latham was a licensed prosthetist, and an officer, director, agent, and/or employee of Defendant Bulow, and Mr. Latham was acting within the course and scope of his employment for Defendant Bulow.

9. That at all times relevant hereto, Defendant Bulow was the employer or principal of Robert C. Latham.

10. That Defendant Bulow is responsible for Robert C. Latham's actions and omissions, and the consequences of his actions that led to the injury of Plaintiff on May 23, 2020, pursuant to the doctrines of *respondeat superior* and agency.

11. Between June 13, 2018 and October 31, 2019, the agents, servants, and employees

of Defendant Bulow, including Robert C. Latham, assessed and fitted the Plaintiff for a prosthetic leg and foot to accommodate Plaintiff's left leg transtibial amputation, which the Plaintiff underwent in January 2018.

12. Between June 13, 2018 and October 31, 2019, the left leg and foot prosthetic device (hereinafter "the device") was designed by Defendant Bulow's employee and agent, Robert C. Latham, to assist the Plaintiff with safely walking unassisted.

13. Between June 13, 2018 and October 31, 2019, the multi-component device was designed, manufactured, assembled, and sold by the Defendant Bulow through it's employee and agent Robert C. Latham, with Mr. Latham's stated objective to off-load, or remove, pressure from the distal end of the prosthesis.

14. Between June 13, 2018 and October 31, 2019, in designing, manufacturing, and assembling the device, the Defendant, by and through its agents, including Mr. Robert C. Latham, utilized a specific flexure joint known in the prosthetic industry as the Tamarack Joint. The Defendant, by and through its agents, including Mr. Robert C. Latham, utilized the Tamarack Flexure Joint at a location on the device that was expected to and intended to undergo high compression loads.

15. It is widely known, and accepted in the prosthetic industry that the Tamarack Flexure Joint utilized by Defendants in Plaintiff's prosthetic device was designed and intended for use in orthotic application, and not for prosthetic application. It is widely known, and accepted in the prosthetic industry that the Tamarack Flexure Joint was not designed nor intended for use in prosthetic application where the Tamarack Joint would be subjected to high compression loads.

16. Despite the widely known limitations of the Tamarack Flexure Joint, the Defendants, by and through its agents, including Mr. Robert C. Latham, installed and utilized the

Tamarack Flexure Joint at a location of the device which was designed by the Defendant and its agents to be weight bearing, and expressly known to the Defendant and its agents to be placed under excessive load and pressure.

17.     On or about October 31, 2019, the Defendant, by and through its agents, including Mr. Robert C. Latham, made final fittings and adjustments to the device, including "torquing" the flexure anchor screws, and the Defendant, by and through its agents, including Mr. Robert C. Latham, delivered the device to the Plaintiff, with specific instruction that it may be used for traversing stairs and uneven surfaces.

18.     On or about December 30, 2019, the Plaintiff was seen by agents of Defendant Bulow where she reported a cracking sound coming from the prosthesis, that she was concerned something had broken on the prosthesis. The device was superficially inspected by Defendant's employee and agent, Robert C. Latham, and it was determined that a piece of the device had fallen off. No further inspection, testing or evaluation of the prothesis, to conclude the flexure joints, to determine the cause of the cracking sound took place.

19.     On or about March 17, 2020, the Plaintiff was again seen by agents of Defendant Bulow for repair of her device, and some refitting or resizing took place, but again the Defendant's employee and agent Robert C. Latham did not conduct an investigation of the prosthesis' component parts to evaluate the cause of the earlier reported cracking sound.

20.     Before and on March 17, 2020, the Plaintiff was informed that the subject device and its component parts were safe for use and functioned appropriately by Defendant Bulow through its agents, including Defendant Latham and, accordingly, Plaintiff continued to use the device as instructed.

21.     On May 23, 2020, the Plaintiff was walking on the exterior walkway or driveway

of her home toward her front door. The Plaintiff was wearing the subject prosthetic device, while also utilizing a walker. The Plaintiff began to transition from her walker to a wheelchair. She reached for her wheelchair and the Tamarack Flexure Joint failed. The Plaintiff heard an audible crack as the joint failed. The flexure screw shot out from the joint, the prosthesis failed, which caused the Plaintiff to immediately lose balance, and she fell forward with her left knee making contact first with the concrete, which resulted in severe injury.

22.     The Plaintiff was acting in a reasonable, prudent and careful manner at all times pertinent hereto and was not at fault in any way.

23.     As a result of the devices failure and resulting fall on May 23, 2020, the Plaintiff suffered substantial physical trauma and injuries requiring surgery and the implantation of hardware in her body.

### AS A FIRST CAUSE OF ACTION
Negligence

24.     Defendant Bulow and its agents had a duty to exercise reasonable and prudent care in the development, testing, fabricating, fitting, repairing, design, manufacture, inspection, marketing, labeling, promotion, and sale of the prosthetic device so as to avoid exposing others, including Plaintiff, to foreseeable and unreasonable risks of harm.

25.     Defendant Bulow and its agents, including Robert C. Latham, knew or reasonably should have known that the prosthetic device at issue in this case was defective, and dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

26.     At the time of manufacture and sale of the subject prosthetic device, Defendant and its agents, including Robert C. Latham, knew or should have known that the subject prosthetic device:

        a.     Was designed and manufactured in such a manner so as to present an

5

      unreasonable risk of fracture and/or failure of material portions of the device, including the Tamarack Flexure Joint;

   d. Was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal, foreseeable, and expected use.

27. Defendant and its agents, including Robert C. Latham, were in the best position to appreciate the danger, and knew or reasonably should have known that Plaintiff would not realize the danger associated with using the device in its intended use and/or in a reasonably foreseeable manner.

28. Defendants and its agents, including Robert C. Latham, breached their to duty to exercise reasonable and prudent care in the development, testing, fabricating, fitting, repairing, design, manufacture, inspection, marketing, labeling, promotion, and sale of the subject prosthetic device in, among other ways, the following acts and omissions:

   a. Fitting, designing, manufacturing, adjusting, repairing, and selling a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

   b. Failing to use reasonable care to warn or instruct, including pre and post-sale, Plaintiff, about the subject prosthetic device's defective and dangerous condition;

   c. Failing to perform reasonable pre and post-sale testing, fitting and repair of the subject prosthetic device to determine whether or not the product was safe for its intended use;

6

      d.      Representing that the subject prosthetic device was safe for its intended use when, in fact, Defendant and its agents knew and should have known the device was not safe for its intended purpose;

      e.      Failing to comply with the standard of care in the design, manufacturing, fitting and repair of subject prosthetic device;

      f.      A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the before-mentioned acts and omissions.

29.     The injuries and damages described in this Complaint were the direct, foreseeable, and proximate result of the negligent and careless, and willful, wanton, reckless, and grossly negligent acts or omissions of Defendant Bulow by and through its agents, including Robert C. Latham, who was acting in the course and scope of his employment, agency and representation of Defendant Bulow in the following particulars:

      a.      Physical injury and harm;

      b.      Medical treatments, procedures, and surgery which she would not otherwise have had to endure;

      c.      Past and future medical expenses;

      d.      Loss of strength, mobility, and range of motion;

      e.      Pain, anxiety, suffering, and humiliation;

      f.      Fear and apprehension;

      g.      Past and future physical and mental pain and suffering;

      h.      Mental, emotional, and psychological damage

      i.      Past and future loss of the quality of life and life's activities.; and

j.      In such other and further ways as discovery and trial shall prove.

All of which were a direct and proximate cause of the injuries and damages sustained by Plaintiff as alleged herein.

30.     That due to the willful, wanton, reckless, grossly negligent, and negligent acts of Defendant, by and through its agents, including Robert C. Latham, as set out above, as well as his violation of state law, Plaintiff is entitled to recovery actual and punitive damages, jointly and severally as determined by a jury.

## FOR A SECOND CAUSE OF ACTION
Failure to Warn

31.     The Plaintiff restates each paragraph previously pled as if repeated verbatim.

32.     At all relevant times, Defendant, by and through its agents, including Robert C. Latham, designed, set specifications, manufactured, prepared, fitted, aligned, assembled, processed, marketed, labeled, and sold the subject prosthetic device, including the prosthesis sold to Plaintiff, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers.

33.     The Plaintiff alleges that Defendant Bulow, through its agents and servant, including Robert C. Latham, was the seller of the subject defective prosthesis, that the prosthesis was defective at the time of the sale, that the Defendants sold the device into the stream of commerce, and Defendant knew or should have known the device presented an unreasonable danger to users of the device when put to its intended and reasonably anticipated use. Specifically, Defendant knew or should have known at the time they designed, manufactured, distributed, and sold the device that it posed a significant and higher risk than other similar devices of device failure, fracture, or failure of the inappropriately used Tamarack flexure joint, resulting in serious injuries.

34. Therefore, Defendant, through its agents and servant, including Robert C. Latham had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device. Defendant further had a duty to warn of dangers and proper safety instructions that it became aware of even after the device was distributed and sold to the Plaintiff. Despite this duty, Defendant failed to adequately warn of material facts regarding the safety and efficacy of the device.

35. The risks associated with the device as described herein are of such a nature that ordinary consumers, including Plaintiff, would not have readily recognized the potential risk and potential harm.

37. The Plaintiff alleges that she was, at the time of her injuries, a member of that class of persons contemplated by Defendant as a user or consumer of the device in question, and was, in fact, a user of the device when it failed and caused her injuries.

38. The Plaintiff alleges that the subject device was expected to reach her, as the ultimate user of the subject prosthetic device, in substantially the condition it was in when it was sold, fitted, sized and/or repaired by Defendant Bulow through its agents and servants, including Robert C. Latham.

39. Therefore, the subject prosthetic device sold to Plaintiff was defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

40. As a direct and proximate result of Defendants' lack of sufficient warning and/or instructions, Plaintiff has suffered and will continue to suffer significant medical expenses, extreme pain and suffering, mental anguish, fear and apprehension, loss of enjoyment of life, past and future loss of the quality of life and life's activities and other losses proximately caused by the

device. All of the aforementioned damages were a direct and proximate cause of the injuries and damages sustained by Plaintiff as alleged herein, That Plaintiff is entitled to judgment against Defendant for her injuries described above, and for actual and punitive damages in an amount to be determined by the jury.

### **FOR A THIRD CAUSE OF ACTION**
Design Defect

41. That Plaintiff realleges and reincorporates each paragraph above as if fully set forth verbatim herein.

42. At all relevant times, Defendant, through its agents and servant, including Robert C. Latham, designed, set specifications, manufactured, prepared, fitted, aligned, assembled, processed, marketed, labeled, and sold into the stream of commerce the subject prosthetic device, more specifically the device sold to Plaintiff.

43. The subject device was expected to, and did, reach its intended consumer without substantial change in the condition in which it was in when it left Defendants' possession. In the alternative, any changes that were made to the subject device were reasonably foreseeable to Defendant, and the any changes were made by the Defendant, through its agents and servant, including Robert C. Latham.

44. The subject device was in a condition unreasonably dangerous and was expected to, and did, reach its intended consumer without substantial change in the condition in which it was in when it left the Defendants' possession.

45. The subject device was defective in design because it failed to perform as safely as an ordinary consumer would expect when used as intended or when used in a manner reasonably foreseeable by the Defendant and/or the risk of danger in the design outweighed the benefits of the device.

46. Plaintiff used the device in a manner that was reasonably foreseeable to Defendant.

47. Plaintiff could not have discovered by the exercise of reasonable care the device's defective condition or perceived its unreasonable dangers prior to Plaintiff's use of the device as she was instructed by Defendant, through its agents and servant, including Robert C. Latham.

48. As a direct and proximate result of the subject device's defective design, Plaintiff has suffered and will continue to suffer significant medical expenses, extreme pain and suffering, mental anguish, fear and apprehension, past and future loss of the quality of life and life's activities and other losses proximately caused by the device. All of the aforementioned damages were a direct and proximate cause of the injuries and damages sustained by Plaintiff as alleged herein, That Plaintiff is entitled to judgment against Defendant for her injuries described above, and for actual and punitive damages in an amount to be determined by the jury.

### FOR A FORTH CAUSE OF ACTION
Manufacturing Defect

49. That Plaintiff realleges and reincorporates each paragraph above as if fully set forth verbatim herein.

50. At all relevant times, Defendant, through its agents and servant, including Robert C. Latham, prepared, set specifications, manufactured, processed, prepared, fitted, assembled, processed, marketed, labeled, and sold the subject device to Plaintiff. The subject device was unreasonably dangerous because of a manufacturing defect in that it was different from its intended design and failed to perform as safely as the intended design would have performed.

51. The subject device was in a condition unreasonably dangerous and the subject device was expected to and did reach the Plaintiff without substantial change.

52. Plaintiff used the device in a manner that was reasonably foreseeable to Defendant.

53. As a result of this condition, the product injured Plaintiff and failed to perform as safely as an ordinary consumer would expect when used in a reasonably foreseeable manner.

54. As a direct and proximate result of the subject devices' manufacturing defect, Plaintiff has suffered and will continue to suffer significant medical expenses, extreme pain and suffering, mental anguish, fear and apprehension, loss of enjoyment of life, past and future loss of the quality of life and life's activities and other losses proximately caused by the device. All of the aforementioned damages were a direct and proximate cause of the injuries and damages sustained by Plaintiff as alleged herein, that Plaintiff is entitled to judgment against Defendant for the injuries described above, and for actual and punitive damages in an amount to be determined by the jury.

## FOR A FORTH CAUSE OF ACTION
Breach of Warranty

55. Plaintiff realleges and incorporates each and every allegation contained in all preceding paragraphs above as if fully restated herein.

56. Robert C. Latham was an agent of and servant for Defendant Bulow acting within the course and scope of his employment for Defendant Bulow when the subject device was designed, manufactured, tested, fitted, adjusted, and sold to the Plaintiff.

57. At the time and place of the sale, distribution, and supply of the subject prosthetic device to Plaintiff, Defendants, through representatives, agents, including Robert C. Latham, printed materials, and statements expressly represented and warranted that the subject device was safe and effective for its intended and reasonably foreseeable use.

58. The subject device did not conform to the express representations made by Defendant through sales representatives, agents, printed materials, and other statements. The Plaintiff relied on these express representations in the purchase, and use of the subject device.

59. Defendant knew of the intended and reasonably foreseeable use of the subject

device, at the time they marketed, designed, manufactured sold, and distributed the product for use by Plaintiff, and warranted the product to be of merchantable quality, and safe and fit for its intended use.

60. The representations and warranties made by Defendant were false, misleading, and inaccurate because the subject device was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner.

61. Defendant placed the subject device into the stream of commerce in a defective unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff without substantial change in the condition in which the subject device was manufactured and sold.

62. Defendant breached their warranty because the subject device was not fit for its intended use and purpose.

63. As a direct and proximate result of the Defendants' breach of their warranties, Plaintiff has suffered and will continue to suffer significant medical expenses, extreme pain and suffering, mental anguish, fear and apprehension, past and future loss of the quality of life and life's activities and other losses proximately caused by the device. All of the aforementioned damages were a direct and proximate cause of the injuries and damages sustained by Plaintiff as alleged herein, That Plaintiff is entitled to judgment against Defendants for her injuries described above, and for actual and punitive damages in an amount to be determined by the jury.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully prays as follows:

A. That the Court award the Plaintiff judgment against Defendant for damages sought herein.

B. That the Court award all such other sums as shall be determined to fully and fairly compensate the Plaintiff for all general, special, incidental, punitive, and consequential damages incurred, or to be incurred, by the Plaintiff as the direct and proximate result of the acts and omissions of the Defendant;

C. That the Court award the Plaintiff her costs, disbursements, and reasonable attorneys' fees incurred;

D. That the Court award the Plaintiff the opportunity to amend or modify the provisions of this Complaint as necessary or appropriate after additional or further discovery is completed in this matter, and after all appropriate parties have been served;

F. That the Court award actual and punitive damages and such other and further relief as this honorable Court and the jury deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues and claims triable by a jury in this matter.

JOYE LAW FIRM, L.L.P.

By:    s/Milt D. Stratos
Milton D. Stratos, II
Federal ID No.:  12275
mstratos@joyelawfirm.com
William C. Asche
Federal ID No.:  13582
wasche@joyelawfirm.com
Post Office Box 62888
5861 Rivers Avenue (29406)
North Charleston, SC 29419-2888
Office:  (843) 554-3100
Facsimile:  (843) 529-9180

Attorneys for Plaintiffs

North Charleston, South Carolina
This 16th day of May, 2023.